**OKLAHOMA TURNPIKE AUTHORITY and Broce Construction Company, a Corporation, Plaintiffs in Error,**

v.

**D. H. WALDEN, Defendant in Error.**

**No. 39458.**

Supreme Court of Oklahoma.

Feb. 13, 1962.

Rehearing Denied May 8, 1962.

Application for Leave to File Second Petition for Rehearing Denied June 12, 1962.

Clayton B. Pierce, John R. Couch, Oklahoma City, of counsel, Pierce, Mock, Duncan, Couch & Hendrickson, Oklahoma City, for plaintiff in error, Broce Construction Co. of Oklahoma.

Wright & Lowrey, Woodward, Covington & Gibbon, Tulsa, for plaintiff in error, Oklahoma Turnpike Authority.

C. W. Schwoerke, K. J. Schwoerke, Oklahoma City, Heber Finch, and Heber Finch, Jr., Sapulpa, James R. Eagleton, Oklahoma City, for defendant in error.

JOHNSON, Justice.

The defendant in error, Dr. D. H. Walden, hereafter referred to as plaintiff, was involved in an automobile collision on the Turner Turnpike in Lincoln County, Oklahoma. At that time he was a resident of Tulsa County, Oklahoma. He subsequently moved his residence to Creek County, Oklahoma, and filed suit there against the Oklahoma Turnpike Authority; the Broce Construction Company, a corporation, and John and Mary Glasscock, hereafter referred to as defendants, for recovery of damages for personal injuries. The suit was subsequently dismissed against the Glasscocks. A trial before a jury resulted in a judgment against the Turnpike Authority and the Broce Construction Company for $85,000.00, from which judgment this appeal is perfected by both defendants.

The petition alleged that the plaintiff was driving west on the turnpike at about 11:15 A.M. Monday, November 8, 1958, on the right hand lane; that at a point about one-half mile east of Stroud, he approached a dump truck also traveling west in the right hand lane; that plaintiff started to pass said truck when, without warning, said truck made a left turn in front of plaintiff's car into an unmarked lane crossing the median for the purpose of going to an asphalt plant located south of the pike. A collision followed, resulting in plaintiff's injuries.

The allegations of negligence against the Turnpike consist of two charges: 1. That no signs of any type warning about truck crossing the median were posted. 2. That no red flags were displayed or watchmen supplied nor highway patrolmen placed to protect the public.

The evidence reveals that the Broce Construction Company had a resurfacing contract and was engaged in such enterprise at a point some twenty miles east of the point of collision; that trucks hauling asphalt would load up at the asphalt plant immediately south of the point of collision in Lincoln County and drive east, unload and return to the asphalt plant. The defendant Broce Construction Company urges as one defense that the truck involved in the collision was owned by an independent contractor, but we deem it unnecessary to pass upon this question for the reasons hereinafter set out.

As stated above, the accident occurred in Lincoln County. The suit was filed in

Creek County, the county of plaintiff's residence. Summons was served upon the Broce Company in Woodward County, Oklahoma. The Turnpike Authority was served in Tulsa County, Oklahoma. From the very beginning of the proceeding to the entry of judgment, the Broce Construction Company by the proper record objected to the jurisdiction of the Creek County Superior Court.

The Turnpike Act of the Oklahoma Legislature (69 O.S.1951, §§ 653 to 655) provides that a suit against the Turnpike Authority may be brought "in the county in which the principal office of the Authority shall be located; or *in the county of the residence of plaintiff*, or in the county where the cause of action arose * * *." (Emphasis ours).

The suit was not brought in the county where the principal office of the authority was located nor in the county where the collision occurred. It was brought in the county of plaintiff's residence.

There is no provision in the law of Oklahoma for suing an Oklahoma corporation in the county of plaintiff's residence unless service of process can be had upon such corporation in that county or unless the cause of action arose in that county. 12 O.S.1951 § 134. Therefore the Creek County Superior Court had no jurisdiction over the Broce Construction Company unless a cause of action were established against its sole co-defendant, the Turnpike Authority. Mills v. Daubenheyer, 96 Okl. 268, 222 P. 523; Bingham v. Williams, Okl., 264 P.2d 751; Adams v. Stapp, Okl., 297 P.2d 389.

This necessitates an analysis of the evidence to determine whether a cause of action was established against the Turnpike Authority. If none was so established, the judgment against the Broce Construction Company cannot be sustained.

██ The evidence establishes these facts without dispute:

1. The construction contract between Broce Construction Company and the Oklahoma Turnpike Authority provided that all necessary signs and flags were to be furnished by the Broce Construction Company, contractor.

2. That all signs ordered put up by the highway patrol were put up and the highway patrol supervised the safety measures.

3. The evidence shows that at the time of this collision there were twelve highway patrolmen on duty on the turnpike.

██ In the case of Oklahoma Turnpike Authority v. Kitchen, Okl., 337 P.2d 1081, the second paragraph of the syllabus by the court reads:

"In view of 69 O.S.1957 Supp. § 692, which provides that the enforcement of state traffic laws on turnpikes shall be the exclusive responsibility of the Department of Public Safety, the Oklahoma Turnpike Authority is under no duty to employ other police personnel or means to prevent traffic law violations on the turnpike."

The body of the opinion contains the following:

"69 O.S.1957 Supp. § 692, enacted in 1953, provides as follows:

" 'Enforcement of both traffic laws and the general laws of the State of Oklahoma on Turnpikes shall be the *exclusive responsibility* of the Department of Public Safety, and the cost thereof shall be borne by the Oklahoma Turnpike Authority. Provided that the Authority shall be liable only for such costs as may be agreed to by it under contract or agreement with the Commissioner of Public Safety.' (Emphasis ours).

"If it can be argued that these two sections are inconsistent, we are of the opinion, and plaintiff admits, that the last quoted section is controlling insofar as it places the exclusive responsibility of enforcing the traffic laws and the general laws upon the Department of Public Safety. But plaintiff contends that it does not purport to relieve the Authority from its common law duty to affirmatively provide a sufficient

number of guards on duty at a given time, and in a particular area, and if necessary to employ personnel other than the Highway Patrolmen to act as guards or observers.

"In the present case the conduct which created the dangerous condition was the reckless driving by Reno. Reckless driving is a direct violation of the Uniform Traffic Code, 47 O.S. 1951 § 121.3(j). Therefore the dangerous acts from which plaintiff claims he should have been protected were acts which the Highway Patrol had the exclusive responsibility to prevent.

"Since the Legislature has charged the Highway Patrol with the exclusive duty of preventing (by enforcing the law) reckless driving on turnpikes, we think it follows as a matter of law that the defendant was relieved from employing other personnel or means to prevent reckless driving or other traffic violations.

"Plaintiff also argues that defendant should have caused more Highway Patrolmen to be on duty at the time and place in question. The Department of Public Safety is eminently qualified to determine the number of patrolmen required to provide adequate protection in law enforcement on this stretch of highway, and defendant was entitled to assume that they would assign, or suggest the assignment of, a sufficient number to accomplish such purpose. However, in this connection, plaintiff contends that defendant and not the Department of Public Safety had the discretion of determining the number of Highway Patrolmen that would be assigned to the turnpike. We do not agree.

"69 O.S.1957 Supp. § 693, provides that the Authority shall pay the Department of Public Safety for the use of equipment assigned to the turnpike, as well as the salaries of the police personnel so assigned at such rates as agreed to by the Department and the Authority. Sec. 692 provides that the Authority shall be liable only for such costs as are agreed upon. It appears that the Authority could not be forced to pay for a greater number than agreed upon because the bonds were issued pursuant to Sec. 666 of the 1947 Act which provided that the expenses to be incurred for policing would be discretionary with the Authority. But Secs. 692 and 693 do not relieve the Department of Public Safety of its primary duty to patrol the turnpike and enforce the law thereon.

"Of course the Authority still has the duty of agreeing to pay the expenses for the patrolmen and equipment which the Department reasonably deems necessary. It may be that if it were proved the defendant affirmatively refused to pay the expenses for a greater number of vehicles and patrolmen than were assigned on the day of the accident that a question for the jury would be presented as to whether the number assigned was adequate. Plaintiff proved that there were sixteen patrolmen assigned on the day of the accident. Since the Department of Public Safety has the exclusive responsibility of enforcing the law, it was also its primary and nondelegable duty to determine the number of patrolmen to be assigned and their method of operation. Therefore, unless it were first proved that the defendant would not agree to pay for the number which the department considered necessary, and thereby encouraged the department to violate its duty, the defendant could not be liable by reason of any insufficiency in the number of Highway Patrolmen. In our opinion the trial court erred in failing to sustain defendant's demurrer to the evidence and its motion for a directed verdict."

We think the above opinion conclusively settles the liability of the Turnpike Authority. Both the number of signs and the number of patrolmen were under the ex-

clusive control of the Highway Patrol. In the case at bar, as in the above, the reckless driving, if any, of the truck driver, is the dangerous act from which plaintiff claims he should have been protected. This was the exclusive responsibility of the Highway Patrol. For that reason the motion for a directed verdict by the Turnpike Authority should have been sustained.

■ There being no cause of action against the the Oklahoma Turnpike Authority, the Superior Court of Creek County was without jurisdiction to proceed against the Broce Construction Company.

The cause is reversed with directions to vacate the judgment and to dismiss plaintiff's petition.

WILLIAMS, C. J., and DAVISON, HALLEY, JACKSON and IRWIN, JJ., concur.

BERRY, J., concurs in the result.

BLACKBIRD, V. C. J., dissents.